In re Jeavons: Oberlin Savings Bank Co., Claimant.

(No. B64-5960—Decided March 30, 1965.)

*Mr. Ronald Gordon*, for trustee.
*Messrs. Hyman, Hyman & Zagrans*, for bankrupt.
*Messrs. Wilcox & Wilcox*, for claimant.

GNAU, Referee in Bankruptcy. The written stipulation by the parties of the facts herein, simplifies this case.

There is only one legal question presented for decision: Does a creditor of a bankrupt, adjudicated on November 2, 1964, have a valid lien effective against the bankrupt's trustee, if on May 20, 1964, he has filed only with the Recorder of Lorain County, Ohio, and not with the Secretary of the State of Ohio, a "Continuation Statement" based upon a mortgage recorded only with the County Recorder on April 22, 1961, under the old law then in effect?

The briefs of counsel for the parties seek to raise several additional legal questions involving the adequacy of the description and the exact location of the mortgaged property in the original chattel mortgage, as well as the timeliness of the re-filing of the initial chattel mortgage. In view of the position taken by the writer of this opinion, and the conclusion reached with respect to the question above posed, no discussion of these additional questions is required.

The facts gleaned from this record and from the law, pertinent to the decision herein, are recited seriatim:

1. On April 22, 1961, the chattel mortgage of the Oberlin Savings Bank Company, covering recited chattels, was filed in the office of the Recorder of Lorain County, Ohio;

2. On July 1, 1962, Section 1309.22, Revised Code (Uniform Commercial Code), became effective;

3. On October 8, 1963, a materially amended Section 1309.-22, Revised Code, became effective;

4. On May 20, 1964, the chattel mortgage of the Oberlin Savings Bank Company "was refiled as a Continuation Statement with the County Recorder of Lorain County, Ohio." (Excerpt from Written Stipulation of Facts, p. 2);

5. On November 20, 1964, the Bankrupt herein was adjudicated a bankrupt.

### Discussion of the Law

The above chronological recital of the significant dates places the problem here discussed in stark perspective.

There is no doubt that if the Uniform Commercial Code had not been adopted in Ohio as of July 1, 1962, the law at the time of the recording of the mortgage required only the recordation in Lorain County. There *might* have been a question of

considerable difficulty as to whether under Section 1309.22, Revised Code, as it was phrased between July 1, 1962, and October 8, 1963, a "Continuation Statement" needed to be filed with the office of the Secretary of State of Ohio. However, with the amendment of this section, including the addition of division (C), on October 8, 1963, which was in effect when the bank refiled with the County Recorder of Lorain County and failed to file with the Secretary of the State of Ohio, there can be no question that the bank failed to perfect its lien.

The Uniform Commercial Code made effective in Ohio on July 1, 1962, *replaces* earlier legislation dealing with liens against personal property. Earlier distinctions (under prior legislation) applying to various types of securities are no longer applicable. Cases construing the old law are no longer pertinent. As of November 20, 1964 (the date of the bankruptcy), the bank possessed no lien valid and effective against the bankrupt's trustee.

Section 1309.22, Revised Code, as phrased on May 20, 1964, provided as follows:

"Section 1309.22, Revised Code. When security interest is perfected; continuity of perfection; effect of prior security interest.

"(A) A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken, as provided in Sections 1309.21, 1309.23, 1309.-24, and 1309.25, of the Revised Code. If such steps are taken before the security interest attaches, it is perfected at the time when it attaches.

"(B) If a security interest is originally perfected in any way permitted under Sections 1309.01 to 1309.50, inclusive, of the Revised Code, and is subsequently perfected in some other way under Sections 1309.01 to 1309.50, inclusive, of the Revised Code, without an intermediate period when it was unperfected, the security interest shall be deemed to be perfected continuously for the purposes of such sections.

"(C) A security interest by whatever name designated by any law in effect prior to July 1, 1962, which was perfected prior to such date and in connection with which any statement, instrument, document, or notice was filed, refiled, or recorded pursuant to such law, shall, if such law required a

further filing, refiling, or recording to continue the perfection of such security interest, continue to be perfected without any further filing, refiling, or recording of any statement, instrument, document, or notice until the date provided by such law or July 1, 1964, whichever date is later and will thereupon lapse, unless a continuation statement has been filed after July 1, 1962, and prior to the lapse of such statement, instrument, document, or notice pursuant to this section. Section 1309.38 of the Revised Code, determines the proper place to file such continuation statement and succeeding continuation statements and, except as otherwise provided in this section, division (C) of Section 1309.40 of the Revised Code, applies to and governs the period of effectiveness and the requirements respecting such continuation statements. (130 v H 565. Eff. 10-8-63. 129 v 13)''

When Section 1309.22, Revised Code, as it existed prior to that time, is compared, it is found that division (C) is entirely new. The applicable part of Section 1309.38, Revised Code, referred to in division (C), as it existed on May 20, 1964, provided as follows:

''Section 1309.38, Revised Code (UCC 9-401) Place of filing; erroneous filing; removal of collateral.

''(A) The proper place to file in order to perfect a security interest is as follows:
''* * *

''(3) in all other cases, in the office of the Secretary of State and, in addition, if the debtor has a place of business in only one county of this state, also in the office of the county recorder of such county, or if the debtor has no place of business in this state, but resides in the state, also in the office of the county recorder of the county in which he resides. * * *''

The significance of this important amendment of Section 1309.22, Revised Code, has not been taken into consideration in the brief filed on behalf of the bank. It states on p. 2, ''A distinction must be drawn between an original financing statement filed to create a lien or to perfect a security interest and a Continuation Statement filed to continue or to preserve a lien or security interest.'' Again it must be remembered that the lien existing under the old law was nullified—that it did not continue to be effective as a lien—unless a Continuation

Statement was filed as provided by Section 1309.38 (A) (3), Revised Code.

The prime responsibility of the lien seeker as stated in the statute is to file his Continuation Statement ''in the office of the Secretary of State.'' The section goes on to state that if the debtor has a place of business in only one county of the state, then the lien seeker must also—*in addition to the office of the Secretary of State*—file his Continuation Statement in the office of the County Recorder of such county.

The following language of the Supreme Court of the State of Ohio, in 1892, in the case of *Cross, Trustee*, v. *Carstens*, 49 Ohio St. 548, 575, is impressive:

''The common law having been changed by statute, it would follow, by force of a familiar principle, that the requirements of the statute should be fully complied with by those who seek to avail themselves of its provisions. This rule is recognized by numerous decisions of this court regarding mortgages. *Erwin* v. *Shuey, Assignee*, 8 Ohio St., 509; *Samen, Trustee* v. *Eager*, 16 Ohio St., 209; *Hanes* v. *Tiffany*, 25 Ohio St., 549; *Nesbit* v. *Worts*, 37 Ohio St., 378; *Biteler* v. *Baldwin*, 42 Ohio St., 125; *Cooper* v. *Koppes*, 45 Ohio St. 625, are authorities to the proposition that a failure to comply with the requirements of the statute is fatal to the attempted lien. These cases are instructive as showing the strictness with which the court has held parties to a compliance with the statute, and that defective instruments, or affidavits, will not be cured.''

Earlier on Page 574, the opinion makes the following interesting comment:

''At common law a mortgage of chattels, unaccompanied by possession of the property mortgaged, was fraudulent and void as to creditors, and this principle is re-affirmed in our statute, Section 4150, and following, save that the mortgage is validated, and a lien created, by compliance with the statutory requirements as to registry.''

Even though that opinion involved the construction of the law relating to mortgages, the reasoning is illuminating when applied to the situation existing in the instant case. The attitude of Federal Courts in requiring strict compliance with filing requirements of state statutes when weighing the validity of liens asserted against bankruptcy trustees is illustrated by

184

the language of Judge Egan in *In re: Luckenbill*, 159 Fed. Sup. 129:

"Bankruptcy trustee could prevail over installment seller which had not strictly complied with filing requirements, even though there were no creditors, in existence who could, under state law, contest validity of seller's lien."

Later in his opinion he goes on to state, on page 131:

"We think it fairly certain and sound that a failure to comply with the filing requirements of the Code cannot be excused by a mere showing of good faith on the part of the party whose omission brought him to grief."

The case of *In re: Wright Trustees, Inc.*, 93 F. Supp. 58, was from this district and the opinion was written by Judge Jones, in which the report of my predecessor was approved and confirmed. That case involved mortgages which were filed defectively in that they failed to recite the correct residences and places of business—and the opinion of the Referee, on page 62, states: "Improper or defective recordation is just as ineffective as no recordation at all from the standpoint of constructive notice to third parties."

Conclusion

The foregoing discussion reveals the reason for the conclusion that on the date of the bankruptcy herein the Oberlin Savings Bank Company was not possessed of a valid lien effective against the bankrupt's trustee, but that it is the possessor of a valid unsecured claim as a general creditor of the bankrupt's estate in the sum of $2,775.64, together with any interest at the legal rate which accrued up to the date of bankruptcy.

*Judgment accordingly.*